1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TERROLD EVERETT SWANSON,

11            Petitioner,            No. CIV S-03-1597 DFL DAD P

12      vs.

13   SYLVIA GARCIA,

14            Respondent.            FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2000 judgment of

18   conviction entered against him in Sacramento County Superior Court on charges of lewd acts

19   upon a child under fourteen years of age.  He seeks relief on the grounds that he received

20   ineffective assistance of trial counsel and that his right to due process was violated when the trial

21   court instructed his jury with CALJIC No. 17.41.1.  Upon careful consideration of the record and

22   the applicable law, the undersigned will recommend that petitioner's application for habeas

23   corpus relief be denied.

24            PROCEDURAL BACKGROUND

25            On March 30, 2000, following a jury trial in Sacramento County Superior Court,

26   petitioner was found guilty of ten counts of lewd acts upon a child under fourteen years of age, in

1

violation of California Penal Code § 288(a).  The jury determined that an allegation of substantial

sexual conduct was true within the meaning of California Penal Code § 1203.066(a)(8).  On

April 27, 2000, judgment was imposed and petitioner was sentenced to state prison for a term of

twenty-four years.  (Pet. at 2; Resp't's September 11, 2003 Mot. to Dismiss (MTD) at 1-2 & Ex.

A.)

Petitioner appealed his conviction, claiming he received ineffective assistance of

counsel when his trial attorney failed to make a timely motion for a mistrial and failed to object

to the admission of certain evidence.  In an unpublished opinion filed on May 22, 2001, the

California Court of Appeal for the Third Appellate District, affirmed petitioner's conviction.  In a

petition for review filed in the California Supreme Court on July 3, 2001, petitioner asserted the

same claims he had presented to the Court of Appeal.  The California Supreme Court denied the

petition in an order filed on August 8, 2001.  (Pet. at 3-4; MTD at 2 and Exs. B, D & E.)

Petitioner first sought collateral review in the state courts while his direct appeal

was pending.  A petition for writ of habeas corpus dated May 4, 2001, was filed in the

Sacramento County Superior Court with the assistance of appellate counsel after the Court of

Appeal expanded appellate counsel's appointment for that purpose.  Petitioner claimed that trial

counsel's failure to investigate vital exculpatory evidence deprived petitioner of effective

assistance of counsel.  The petition was denied by order filed October 17, 2001.  Petitioner's next

state habeas petition, dated March 14, 2002, was received by the California Supreme Court on

March 18, 2002, and was filed in that court on April 8, 2002.  The petition was denied on July

24, 2002.  Petitioner filed a second state habeas petition in the California Supreme Court on

March 6, 2003, alleging that the jury in his case was erroneously instructed pursuant to CALJIC

No. 17.41.1.  It appears that petition was denied on July 7, 2003.  (Pet. at 4-7 & Attach.; MTD at

2 & Exs. C, F, G, & H.)

/////

/////

2

1    Petitioner filed his federal habeas petition in this court on July 30, 2003.

2 Respondent filed her answer on November 22, 2004, and petitioner filed a traverse on January 3,

3 2005.

4            FACTUAL BACKGROUND[1]

5    <u>Prosecution case-in-chief</u>

6    Defendant had a relationship with Sonya W. between 1992 and
1997.  They lived at various locations in Sacramento, in Georgia,
7 and in Colorado.  Defendant stayed with Sonya's children while
Sonya worked evening hours.

8

9    Defendant's relationship with Sonya ended in September 1997.  In
January 1998, Sonya moved to Yuba City, where her nine-year-old
daughter, Yvonne, started the fourth grade.  In April 1998, Yvonne
10 told a teacher that defendant had been molesting her.  The next
day, a Sutter County Sheriff's deputy interviewed Yvonne and
11 Sonya.  Later, Yvonne spoke with a Sacramento detective and was
examined at the U.C. Davis Medical Center.

12

13    Yvonne testified that, after attending a school function on sexual
harassment, she told her teacher that defendant "used to mess with
[her] private part."  According to Yvonne, defendant "put his
14 private part in [her] private part" when she was home alone with
him in Sacramento.  He molested her on more than 50 occasions,
15 approximately four times per week.  Sometimes it hurt.  He would
ask her if it felt good.  When she would try to push him off of her,
16 he would say "[j]ust a few more minutes."  He also touched her
private part with his tongue seven times.  Defendant told Yvonne
17 not to tell her mother.  She was afraid he might hurt her if she did
so.

18

19    Cathy Boyle, a pediatric nurse practitioner, saw Yvonne in May
1998, when she was nine and a half years old.  After learning that
defendant repeatedly had penetrated Yvonne's vagina with his
20 penis, Boyle examined Yvonne and determined her hymen was
abnormal in that it was "thickened and rolled."  Yvonne had very
21 little hymenal tissue, which indicated a significant injury.  Based
on her training and experience, Boyle opined that a large object had
22 penetrated Yvonne on more then one occasion.

23    Boyle and three pediatricians work as a team to determine whether
a child has suffered sexual abuse.  Before Boyle revealed
24

25    [1] The following summary is drawn from the May 22, 2001 opinion by the California
Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-5, filed on
26 November 22, 2004, as exhibit C to respondent's answer.

information about Yvonne's history other than her age, Dr. Boos and Dr. McCann analyzed the photographs from Yvonne's colposcopic examination while Dr. Rosas took notes. Thus, when they reviewed the photographs, the doctors did not know how Yvonne's vagina had been traumatized. From the photographs, the doctors concluded there was evidence of healed hymenal trauma. Yvonne's trauma was classified as five on a scale of one to six, which means healed trauma consistent with sexual abuse injury. After the trauma was classified, Boyle revealed Yvonne's allegation that defendant repeatedly had penetrated her. Yvonne's allegation was consistent with the trauma that Boyle observed during the examination and in the photographs. Boyle initially formed her opinion right after the examination; the photographs did not change her opinion. Boyle's opinion at trial was based in part on the fact that the doctors had corroborated her initial opinion.

Defense

In a July 1998 statement to a defense investigator, Sonya claimed she kicked defendant out of her home in October 1994 because she discovered he was having an affair with a woman named Tenisha. Sonya went to Tenisha's home to find out about the affair. While there, defendant arrived. Sonya said she did not want to see him again.

Tenisha S. testified that she married defendant in 1998. They had no children together, but three of Tenisha's children lived with the couple. She met Sonya in 1994, when Sonya came to Tenisha's home and said she was there to "get [her] man." While they argued, Sonya stated she would "make sure" that defendant would not be with Tenisha by having him arrested for drug use, spousal abuse, or child sexual abuse.[2]

Defendant testified that, in September 1994, he arrived at Tenisha's home and saw Sonya there. After they argued, he asked Sonya to leave. Sonya responded by telling him that he would never see his children again, and that she did not want to see him either. She threatened to make sure that, if his children ever saw him again, they "wouldn't spit on [him] if [he] was on fire."

Defendant claimed that he renewed his relationship with Sonya in order to see his children. They moved to various locations with Yvonne and the other children. In April 1997, he left Sonya again because they continued to argue. Following the separation, she sent him a letter threatening that he would never see the children,

---

[2] While testifying during the People's case-in-chief, Sonya acknowledged discovering that defendant was seeing another woman while he lived with Sonya; but she denied confronting or threatening Tenisha.

4

1
2
3
4

that she would pursue him for child support, and that she would
send him to prison.  She later apologized and they briefly
reconciled in Georgia and Colorado.  Eventually, he returned to
Sacramento and resumed his relationship with Tenisha.
Defendant denied ever having sexual intercourse with Yvonne,
engaging in oral copulation with her, or otherwise molesting her.

5                                    ANALYSIS

6   I.  Standards of Review Applicable to Habeas Corpus Claims

7                A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

8   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

9   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

10  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

11  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

12  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

13  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

14  (1972).

15               This action is governed by the Antiterrorism and Effective Death Penalty Act of

16  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

17  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

18  habeas corpus relief:

19                    An application for a writ of habeas corpus on behalf of a
                 person in custody pursuant to the judgment of a State court shall
20               not be granted with respect to any claim that was adjudicated on
                 the merits in State court proceedings unless the adjudication of the
21               claim -

22                    (1) resulted in a decision that was contrary to, or involved
                 an unreasonable application of, clearly established Federal law, as
23               determined by the Supreme Court of the United States; or

24                    (2) resulted in a decision that was based on an unreasonable
                 determination of the facts in light of the evidence presented in the
25               State court proceeding.

26  /////

                                         5

1   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

2   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3          The court looks to the last reasoned state court decision as the basis for the state

4   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

5   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

6   federal habeas court independently reviews the record to determine whether habeas corpus relief

7   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

8   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

9   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

10  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

11  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

12  1167 (9th Cir. 2002).

13  II.  Petitioner's Claims

14         A.  Ineffective Assistance of Counsel

15         Petitioner claims his trial attorney rendered ineffective assistance when he: (1)

16  failed to investigate and present exculpatory evidence; (2) failed to timely request a mistrial after

17  prejudicial evidence was admitted into evidence; (3) failed to object to prejudicial hearsay; and

18  (4) failed to raise an objection based on the Confrontation Clause to testimony given by pediatric

19  nurse Cathy Boyle.  After setting forth the applicable legal principles, the court will evaluate each

20  of these claims in turn below.

21         1.  Legal Standards

22         The Sixth Amendment guarantees the effective assistance of counsel.  The United

23  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

24  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

25  counsel, a petitioner must first show that, considering all the circumstances, counsel's

26  performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

6

1   identifies the acts or omissions that are alleged not to have been the result of reasonable

2   professional judgment, the court must determine whether, in light of all the circumstances, the

3   identified acts or omissions were outside the wide range of professionally competent assistance.

4   Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that

5   he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice

6   is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

7   result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a

8   probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S.

9   at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

10  determine whether counsel's performance was deficient before examining the prejudice suffered

11  by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an

12  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

13  followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

14  697).

15          In assessing an ineffective assistance of counsel claim "[t]here is a strong

16  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

17  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

18  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

19  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

20  Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

21  of sufficient investigation and preparation to make reasonably informed, reasonably sound

22  judgments."  Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

23          2.  Failure to Investigate Evidence of Bias

24          Petitioner claims that his trial counsel rendered ineffective assistance when he

25  failed to investigate and present exculpatory evidence in the form of a letter from Yvonne's

26  mother threatening to accuse him of child molestation if he "married the other woman."  (Pet. at

7

5.)  Petitioner informs the court that witnesses to the existence of this letter were willing to testify

at his trial but counsel declined to interview or call them.  In support of this claim, petitioner has

filed the affidavits of his mother, his brother, his wife, and a long-time family friend.  (Answer,

Exhs. B,C,D, E to Ex. H.)  All of these declarants state that they saw a letter, which has

apparently been lost, in which the victim's mother threatened to accuse petitioner of child abuse,

among other things, if he left her for another woman.  (Id.)  Petitioner contends that if these

witnesses had testified at his trial about the existence of this letter, he would not have been found

guilty of the crimes charged against him.

        This claim was raised for the first time in petitioner's application for a writ of

habeas corpus filed in the Sacramento Superior Court.  (Answer, Ex. F.)  The Superior Court

rejected petitioner's arguments, reasoning as follows:

> Petitioner first claims that trial counsel should have called three
> witnesses, his mother, brother, and a family friend, who could have
> testified about the existence of a letter he received from the
> victim's mother, Sonya Williams, threatening, among other things,
> that she would charge him with child abuse and spousal abuse if he
> ever left her for another woman.  He contends this evidence would
> have supported his defense that she fabricated these charges.

> Whether counsel's failure to call these witnesses was deficient
> turns on whether the testimony of these witnesses as to the content
> of the letter would have been admissible.  Oral testimony of the
> content of a lost writing is not admissible if a genuine dispute
> exists concerning material terms of the writing and justice requires
> the exclusion or if admission of the secondary evidence would be
> unfair.  (Evid. Code, §§ 1523(b), 1521(a).)  Whether the testimony
> of the petitioner's mother, brother, and family friend as to the
> contents of the letter would have been admissible under this
> standard is at least questionable.

> This issue need not be reached because the court finds that
> petitioner was not prejudiced by counsel's failure to call these
> witnesses.  That is, there is no reasonable probability that, but for
> counsel's error, the result of the proceeding would have been
> different.

> There was highly credible evidence that the victim first disclosed
> the molestations by petitioner on her own initiative to her teacher
> after attending a school assembly on the subject.  A pediatric nurse
> practitioner testified that the victim's physical exam was consistent

with a sexual abuse injury.  And the victim's testimony about the molestations by defendant was compelling and credible and was subject to cross-examination.  Petitioner testified about the contents of the letter.  And Tanesha Swanson, his current wife, also testified that Sonya Williams had threatened to charge petitioner with child abuse if he ever left her for another woman.

Based on the above evidence, the Court finds it absolutely implausible that Sonya Williams convinced the victim to lie about being molested by petitioner.  To accept this defense, the jury would have had to conclude that Sonya Williams knew her daughter had been or was being molested by someone and convinced her to lie and testify that it was petitioner.  The jury had an opportunity to consider significant evidence of Sonya Williams threats and rejected petitioner's claim that these charges were the result of these threats.  Petitioner's additional evidence would not have affected the jury's verdict.

(Answer, Ex. G at 2-4.)

The Court of Appeals for the Ninth Circuit has stated that "'[a] claim of failure to interview a witness ... cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel.'"  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citation omitted), as amended, 253 F.3d 1150 (9th Cir. 2001); (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).  Petitioner's trial counsel was informed by petitioner that his family and friend could testify about the contents of the threatening letter, but chose, for tactical reasons, not to introduce this testimony.  This decision was reasonable.  "As a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias."  Bergmann v. McCaughtry, 65 F.3d 1372, 1380 (7th Cir. 1995).  In addition, the fact that the alleged letter from the victim's mother threatening petitioner is missing would cast doubt on any self-serving testimony from petitioner's family members that it ever existed.

Even assuming arguendo that counsel's failure to interview these potential witnesses and introduce their testimony about the letter fell below an objective standard of reasonableness, petitioner has failed to demonstrate prejudice.  As noted by the California Superior Court, there was significant objective evidence that the victim had been sexually

1    molested; the victim, and not her mother, reported the abuse to school authorities; and there was

2    no direct evidence that the victim's mother forced her daughter to fabricate charges against

3    petitioner.  Under these circumstances, evidence that petitioner's former girlfriend had threatened

4    to charge him with child abuse would not have had a significant impact on the verdict.  Further,

5    the jury was informed by petitioner and his wife of the threats made against petitioner by the

6    victim's mother.  Indeed, the threats by the victim's mother to have charges brought against

7    petitioner for molesting children was a central theme of defense counsel's closing argument to

8    the jury.  (RT at 374-380, 387.)  The absence of cumulative evidence on this point from

9    petitioner's family and a family friend would not have resulted in a different outcome at trial.

10           Petitioner argues that the prosecutor's closing argument provides support for his

11   claim that he was prejudiced by counsel's failure to introduce evidence about the letter.

12   (Traverse at 5.)  Specifically, petitioner points to that portion of the prosecutor's closing

13   argument wherein she stated that the letter was petitioner's "ticket to freedom" and questioned

14   why, if the letter existed, petitioner's family members had not taken the stand to testify about its

15   existence.  (Reporter's Transcript on Appeal (RT) at 404-05.)  However, after a review of the

16   record, it is clear that the prosecutor was simply engaging in hyperbole in order to cast doubt on

17   petitioner's assertion that this letter ever existed.  (Id. at 403-05.)  In any event, argument by

18   counsel is not evidence and does not establish prejudice in this case.

19           Petitioner argued in state court that his trial counsel rendered ineffective

20   assistance when he failed to introduce other evidence of animosity and bias by the victim's

21   mother, including a false allegation of car theft and spousal abuse and false

22   accusations made by the victim's mother against other former boyfriends.  (Answer, Ex. H at 6-

23   8.)  These claims also fail due to the lack of a showing of prejudice.  As discussed above, the

24   victim herself told authorities about the sexual abuse committed by petitioner, and independent

25   medical evidence verified that she had been abused.  Given this evidence, the prior behavior of

26   /////

1   petitioner's former girlfriend was largely irrelevant to the issues put before the jury at petitioner's

2   trial.[3]

3           The decision of the California Superior Court rejecting petitioner's claim of

4   ineffective assistance of counsel is not contrary to or an unreasonable application of federal law.

5   Accordingly, petitioner is not entitled to habeas relief.

6           3.  Failure to Request a Mistrial

7           Petitioner next claims that his trial counsel rendered ineffective assistance when

8   he failed to make a timely request for a mistrial after the jury was improperly informed that

9   petitioner had previously served time in jail.  The California Court of Appeal fairly explained the

10  background to this claim as follows:

11          Videotape of Yvonne's interview at the Sacramento Sheriff's
            Department was played for the jury.  The next morning, outside the
12          jury's presence, the prosecutor informed the court and defense
            counsel that, contrary to an in limine order, she inadvertently had
13          neglected to redact a passage in the videotape and transcript that
            referred to defendant's arrest in Denver, Colorado.
14
            Immediately prior to this passage, Yvonne was explaining that
15          defendant had molested her while they lived in Denver.  The
            following colloquy then occurred:  "[INTERVIEWER]: . . . How
16          many different times did it happen in your mom's room? [¶]

17  _____

18          [3]  Petitioner argues in the traverse that his state habeas counsel rendered ineffective
    assistance when she failed to attach to her petitions copies of documents reflecting the threats and
19  false accusations made against petitioner by the victim's mother.  (Traverse at 5-6.)  To the
    extent petitioner is attempting to belatedly raise a new claim of ineffective assistance of counsel
20  in this manner, the claim is conclusory and improperly raised and should be denied on that basis.
    See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26
21  (9th Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a
    statement of specific facts do not warrant habeas relief'")); Cacoperdo v. Demosthenes, 37 F.3d
22  504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for
    relief); Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only
23  issues which are argued specifically and distinctly in a party's opening brief").  Even if this claim
    had been properly raised, petitioner has failed to demonstrate a constitutional violation.  No
24  constitutional provision or federal law entitles petitioner to state collateral review.  Pennsylvania
    v. Finley, 481 U.S. 551, 557 (1987).  Therefore, unless state collateral review violates some
25  independent constitutional right, errors cannot form the basis for federal habeas corpus relief.
    See Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989) (errors in a state post-conviction review
26  proceeding are not addressable through federal habeas corpus).  There is no evidence of an
    independent constitutional violation here.  Accordingly, any such claim should be rejected.

YVONNE W:  Um, it happened like every time my mom was gone
. . . . [¶] [INTERVIEWER]:  Okay.  Did it happen on the same day
that he went to jail?  [¶]  YVONNE W:  (Unintelligible)."  Yvonne
went on to say that defendant would call her into her mother's
bedroom while her mother was "like out grocery shopping or
something, or she went somewhere," would tell her to pull down
her pants, and then would "put his private in [her private]."

The court stated it had noticed the passage in the transcript when
the videotape was played and wondered if there would be an
objection, but none was made.  When asked whether he had not
noticed the passage or whether he had decided to not object to it,
defense counsel replied:  "From our standpoint I did recognize and
notice the mistake was made on the tape and the video transcript.
[¶]  Our intent was not to interrupt the court at that time and not –
and the trial at that time.  We did not want to put in an objection at
that point in time in the middle of the tape on the record.  We
figured we could do – or I figured I could do that outside the
presence of the jury.  A recess did go by, and then we did recess for
the evening.  [¶]  And the only thing I did was forget to put it on
the record outside the presence of the jury.  However, it was
something I wanted to put on the record this morning.  I don't
know what the court could possibly do about it now.  [¶]  I do
think, however, that because that statement was in there the bell
has rung in that the jury did see it and not only in writing, but . . .
did hear it[.]  I know we can excise . . . that from the videotape.
But I don't know what that would do to repair the jury.  [¶] . . . I
understand a limiting instruction could be approved that could
possibly go to the jury.  But I don't know the effectiveness of that.
And, thus, I feel that it is my duty as counsel to object to that and
ask for a mistrial as a result of this coming in."

The court replied that a mistrial would not "be in the interests of
justice in this case" and that granting a mistrial should be "a
remedy of last resort."  The court added:  "We do have a child of
young age who's been submitted to direct and cross[-]examination.
And quite frankly I don't know what my ruling would have been
had an objection been made promptly.  [¶]  When the sentence in
question did appear on the transcript I did notice, [defense
counsel], that you appeared to be conferring with your client.  So it
did appear that you didn't miss it.  I mean that's my impression.
And then no objection is ever made and nothing is ever done.
Nothing is said and we . . . continue on.  [¶]  Quite frankly I don't
know how else to put this.  I really do feel that you waived your
right to a mistrial.  I don't think you waive your right to object . . .
But any right to mistrial would be in this court's opinion absolutely
unfair when you consider the fact that . . . you commenced the
cross[-]examination of the little girl and we continued on with the
trial."

/////

> Prior to deliberations, the offending reference was redacted from the videotape and the transcript.  Defense counsel stated for the record that he did not want a limiting instruction.  During deliberations, the jury requested and was provided a videocassette recorder to view the videotape.

(Opinion at 5-7.)

Petitioner claims that his trial counsel rendered ineffective assistance when he failed to make a timely motion for mistrial after the jury heard the interviewer refer to petitioner being "in jail."  He contends that counsel's inaction "waived any right to a mistrial."  (Pet. at 5.)

The California Court of Appeal found that petitioner had failed to establish prejudice with respect to this claim.  (Opinion at 8.)  Specifically, the appellate court concluded that there was no reasonable probability the trial court would have granted a timely motion for mistrial.  (Id.)  The state appellate court explained its reasoning as follows:

> . . . the offending statement was a brief, passing reference to defendant having gone to jail in Denver.  It was not an admission by defendant of any wrongdoing, and it did not indicate that defendant had in fact been found guilty of some serious moral offense different than the crimes he was accused of committing against Yvonne.  Nor was the statement "calculated to result in prejudice to [defendant]."  (citation omitted.)
>
> Because it was so brief and innocuous, the statement was not likely to cause irreparable damage, and any harm could have been cured by an appropriate admonition or instruction.  Hence, it is not reasonably probable that the trial court would have granted a mistrial if defense counsel had made a timely motion.  Accordingly, defendant has failed to establish that he was prejudiced by defense counsel's failure to do so.

(Id. at 9-10.)

Petitioner argues that prejudice is demonstrated by the fact that the trial judge stated he didn't know what his ruling would have been had defense counsel made a timely objection to the interrogator's reference to "jail."  (Traverse at 8.)  However, the trial judge's indecisive statement does not provide evidence either way as to what his ruling would have been.  As noted by the state appellate court, the reference to petitioner being in jail was brief and rather vague.  Further, the videotape was later edited to delete the offending passage, so the jury was

1    not reminded of it when it viewed the tape during deliberations.  This court concludes that there

2    is no reasonable probability petitioner would have obtained a mistrial had his trial counsel made

3    a timely objection to the inadvertent admission of evidence concerning petitioner's previous stay

4    in jail.  The state court's decision to the same effect is not "contrary to" or "an unreasonable

5    application" of federal law."  28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to

6    relief on this claim.

7                      4.  <u>Failure to Object to Testimony of Nurse Practitioner Cathy Boyle</u>

8                      In claims three and four, petitioner argues that his trial counsel rendered

9    ineffective assistance when he failed to object on hearsay and Confrontation Clause grounds to

10   the testimony of Cathy Boyle.  (Pet. at 6.)  The California Court of Appeal described the

11   background to these claims as follows:

12                  Defense counsel tendered a hearsay objection when the prosecutor
                    asked pediatric nurse practitioner Cathy Boyle what findings the
13                  doctors had made after reviewing photographs of the victim's
                    colposcopic examination.  Outside the jury's presence, the trial
14                  court stated:  "As I understand it the offer of proof is that Ms.
                    Boyle at least in part bases her opinion as to the existence of
15                  evidence of sexual molestation based upon the if you will triple
                    blind corroboration observations of doctors Rosas[,], McCann, and
16                  Boos . . . [¶] . . . [¶] . . . which I would anticipate would be that . . .
                    the photographs in their opinion manifested signs of . . . sexual
17                  molestation.  [¶]  Is that correct?"  The prosecutor agreed.  The
                    court determined that, pursuant to Evidence Code section 801,
18                  subdivision (b), Boyle could base her expert opinion on hearsay.
                    Defense counsel requested a limiting instruction.  The jury was
19                  admonished that the doctors' opinions were not admitted for the
                    truth of what they said but to show a basis upon which Boyle
20                  formed her opinion.

21                  Boyle then testified that she initially formed her opinion right after
                    she examined Yvonne.  When she viewed the photographs, her
22                  opinion did not change.  However, she explained that her opinion
                    at trial was "based in part at least" upon what the doctors told her
23                  during the photo review; in other words, the doctors corroborated
                    her initial opinion.  On cross-examination, Boyle reiterated that,
24                  when she first formed her opinion that Yvonne was the victim of
                    sexual molestation, Boyle did not base her opinion upon what the
25                  doctors told her at the ensuing photo review.

26   (Opinion at 10-11.)

1      Petitioner argues that after Boyle explained that she did not rely on the doctors'

2  opinions in reaching her own conclusion, but reached her conclusion prior to speaking to the

3  doctors, counsel should have renewed his hearsay objection.  (Pet. at 6.)  In state court, petitioner

4  claimed that:

5              Ms. Boyle testified – twice – that she reached her opinion
             independently of Drs. Rosas, Boos and McCann.  Their opinions
6              corroborated hers, but were did (sic) not form the basis of hers.
             Competent counsel would have required that Ms. Boyle testify
7              regarding her reliance on the doctors' opinions at the hearing held
             outside the presence of the jury after his initial objection, rather
8              than accepting the prosecutions' assurance as to what her testimony
             would be.  Similarly, once Ms. Boyle testified that she had not
9              relied on the doctors' opinions in reaching her own opinion,
             counsel should have moved to strike those opinions as out-of-court
10             statements being offered for the truth of the matter stated, barred
             by the hearsay doctrine.

11

12  (Answer, Ex. A at 24-25.)

13      In the instant petition, petitioner also argues that trial counsel should have raised

14  an objection to the testimony of Cathy Boyle based on the confrontation clause because

15  "admission of the opinions of absent doctors, without any opportunity to cross-examine them,

16  violated my right to confrontation of witnesses against me."  (Pet. at 6.)  Petitioner recognizes

17  that "expert testimony formed in reliance on the opinions of others does not necessarily violate

18  the confrontation clause, because cross-examination of the testifying witness furnishes the means

19  through which the opinions may be tested through confrontation and cross-examination."

20  (Answer, Ex. A at 30.)  He argues, however, that the opinions of the three doctors did not form

21  the basis of Ms. Boyle's opinion; therefore, "the rationale justifying the admission of out-of-court

22  statements on which an expert relies was not applicable here."  (Id. at 31.)

23      The California Court of Appeal rejected both of petitioner's challenges to Ms.

24  Boyle's testimony, reasoning as follows:

25             Boyle made it plain that, at the conclusion of her physical
             examination of Yvonne, she first formed an opinion as to the cause
26             of Yvonne's injuries.  That opinion was not based on the doctors'

15

1   hearsay statements because the doctors had not yet seen the
    photographs of the examination.  A hearsay objection to that
2   opinion would have been futile.

3   Boyle also made it plain that her opinion at trial, which was the
    target of the hearsay objection, was "based in part at least upon
4   what [the doctors] told [her] later on," i.e., after Boyle showed
    them the photographs.  Her acknowledgment on cross-examination
5   that she did not rely on the doctors' opinions when she "made,"
    i.e., first formed, her own opinion did not detract from her
6   testimony that her opinion at trial was based in part on the doctors'
    opinions.  Hence, the doctors' opinions were properly admitted to
7   show a basis on which Boyle reached her opinion at trial.  (Evid.
    Code, § 801, subd. (b); People v. Carpenter (1997) 15 Cal.4th 312,
8   403.)  For this reason, hearsay and confrontation objections to
    Boyle's opinion at trial would have been futile.  Defense counsel
9   was not ineffective for having failed to make futile objections.
    (People v. Stratton (1988) 205 Cal.App.3d 87, 97.)

10

11  (Opinion at 11-12.)

12          Both of petitioner's challenges to Ms. Boyle's testimony are based on the premise

13  that Boyle did not rely on the opinions of the doctors in forming her own opinion that the victim

14  had been sexually abused.  Petitioner argued in state court that the opinions of the doctors

15  "corroborated hers, but . . . did not form the basis of hers."  (Answer, Ex. A at 24.)  The state

16  appellate court, however, concluded that the doctors' opinions sufficiently informed Boyle's trial

17  testimony that they were admissible "to show a basis on which Boyle reached her opinion at

18  trial."  The appellate court's conclusion in this regard is not "an unreasonable determination of

19  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

20  2254(d)(2).

21          This court also notes that upon questioning by the trial judge, nurse practitioner

22  Boyle agreed that her testimony at trial was based, at least in part, upon what the doctors told her

23  after they had evaluated the victim's photographs, and that their opinions "corroborated [her]

24  opinion."  (RT at 242.)  It appears, then, that Ms. Boyle's testimony was based, at least in part,

25  upon the corroborating opinions of the three doctors.  That being the case, petitioner's claim

26  must fail for lack of a factual basis.

1          Finally, the court observes that at trial petitioner's counsel did object to Ms.

2   Boyle's testimony on the grounds that it was based on hearsay.  Further, the basis of Ms. Boyle's

3   testimony, and specifically the extent to which it was informed by the opinions of the three

4   doctors, was fully explored at trial.  Under those circumstances, counsel's failure to renew his

5   objections or to make further attempts to clarify the basis of Ms. Boyle's testimony was not

6   outside the wide range of professionally competent assistance.  For all of these reasons, petitioner

7   is not entitled to relief on these claims.

8          B.  Jury Instruction Error

9          Petitioner's final claim is that his federal constitutional rights were violated when

10  the jury was instructed with CALJIC No. 17.41.1.  This claim was raised for the first time in

11  petitioner's application for a writ of habeas corpus filed in the California Supreme Court.

12  (Answer, Ex. J.)  The Supreme Court denied the petition with citations to In re Clark, 5 Cal. 4th

13  750 (1993) and In re Dixon, 41 Cal. 2d 756.)  (Answer, Ex. K.)  Respondent argues that the

14  Supreme Court's citation to Clark and Dixon constitutes a state procedural bar precluding this

15  court from addressing the merits of petitioner's jury instruction claim.

16          1.  Procedural Default

17          When a state prisoner fails to exhaust his federal claims in state court and the state

18  court would now find the claims barred under applicable state rules, the exhaustion requirement

19  is satisfied, but the federal claims are procedurally barred.  Coleman v. Thompson, 501 U.S. 722,

20  735 n.1 (1991); Casey v. Moore, 386 F.3d 896, 920 (9th Cir. 2004).  Similarly, if a federal

21  constitutional claim is expressly rejected by a state court on the basis of a state procedural rule

22  that is independent of the federal question and adequate to support the judgment, the claim is

23  procedurally defaulted.  Coleman, 501 U.S. at 729-30; Bennett v. Mueller, 322 F.3d 573, 580

24  (9th Cir. 2003).  Habeas review of procedurally defaulted claims is barred unless the petitioner

25  demonstrates cause for the procedural default and actual prejudice, or that the failure to consider

26  the claims will result in a miscarriage of justice.  Coleman, 501 U.S. at 750.  Although the

1   question of procedural default "should ordinarily be considered first," a reviewing court need not

2   do so "invariably," especially when it turns on difficult questions of state law.  <u>Lambrix v.</u>

3   <u>Singletary</u>, 520 U.S. 518, 524-25 (1997).  <u>See</u> <u>also</u> <u>Busby v. Dretke</u>, 359 F.3d 708, 720 (5th Cir.

4   2004).  In this case, this court finds that petitioner's jury instruction claim can be resolved more

5   easily by addressing it on the merits.  Accordingly, this court will assume that petitioner's claim

6   is not procedurally defaulted and will address it on the merits.

7                              2.  <u>Merits of Petitioner's Jury Instruction Claim</u>

8                   Petitioner's jury was instructed with CALJIC No. 17.41.1, which provides as

9   follows:

10              The integrity of a trial requires that jurors, at all times during their
                deliberations, conduct themselves as required by these instructions.
11              Accordingly, should it occur that any juror refuses to deliberate or
                expresses an intention to disregard the law or to decide the case
12              based on penalty or punishment, or any other improper basis, it is
                the obligation of the other jurors to immediately advise the Court
13              of the situation.

14   (Clerk's Transcript on Appeal at 101).  Petitioner claims that this jury instruction violated his

15   right to "trial by jury, to jury unanimity, and to due process of law."  (Answer, Ex. J at Points and

16   Authorities (P&A) p. 6; Pet. at 6.)  Petitioner contends that the instruction may have "infring[ed]

17   on the secrecy of jury deliberations" and "prohibit[ed] the jurors from discussing notions of

18   justice, oppression and fairness as applied to this case."  (P&A at 2, 6.)

19                   Petitioner's claim for relief is foreclosed by the decision in <u>Brewer v. Hall</u>, 378

20   F.3d 952, 955-57 (9th Cir.), <u>cert.</u> <u>denied</u>, 543 U.S. 1037 (2004).  In <u>Brewer</u>, the Ninth Circuit

21   held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1, habeas corpus relief

22   was unavailable on the identical claim presented by petitioner here because there is "no Supreme

23   Court precedent clearly establishing" that use of this jury instruction violates a defendant's

24   constitutional rights.  <u>Id.</u> at 955-56.  Here, as in <u>Brewer</u>, petitioner "has pointed to no Supreme

25   Court precedent clearly establishing that CALJIC 17.41.1--either on its face or as applied to the

26   facts of his case--violated his constitutional rights."  <u>Id.</u> at 957.  Thus, the state court's rejection

1  of petitioner's jury instruction claim was not contrary to or an unreasonable application of clearly

2  established federal law.  28 U.S.C. § 2254(d).[4]

3         Even if the state trial court erred in instructing the jury with CALJIC No. 17.41.1,

4  any such error was harmless under the circumstances of this case.  See Brecht v. Abrahamson,

5  507 U.S. 619, 623 (1993) (holding that a federal court may not grant habeas relief for trial errors

6  without a showing of actual prejudice, defined as a "substantial and injurious effect or influence

7  in determining the jury's verdict").  There is no evidence that any of the jurors at petitioner's trial

8  wished to engage in jury nullification or that any juror was a "holdout" for acquittal.  There is

9  simply no indication that the giving of CALJIC No. 17.41.1 in this case chilled the jurors'

10  exercise of free speech or prevented free and full deliberations on the part of the jury.

11  Accordingly, petitioner is not entitled to relief on this claim.

12                                      CONCLUSION

13         For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

14  application for a writ of habeas corpus be denied.

15         These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within ten days after service of the objections.  The parties are advised

21  /////

22  /////

23

24         [4] In People v. Engelman, 28 Cal. 4th 436, 439-40 (2002), the California Supreme Court
25  held that CALJIC No. 17.41.1 "does not infringe upon defendant's federal or state constitutional
   right to trial by jury or his state constitutional right to a unanimous verdict."  However, using its
26  supervisory authority over the lower state courts, the California Supreme Court discontinued the
   use of CALJIC No. 17.41.1 because of its "potential" to intrude on jury deliberations.  Id. at 440.

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: May 23, 2007.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:8:swanson1597.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

20